**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02471-WYD-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

LUCY MARSH,
K.K. DuVIVIER,
NANCY EHRENREICH,
KRIS McDANIEL-MICCIO,
CATHERINE SMITH,
JOYCE STERLING, and
CELIA TAYLOR,

Intervenors,

v.

UNIVERSITY OF DENVER,

Defendant.

---

**SECOND AMENDED COMPLAINT IN INTERVENTION**

---

Plaintiff-Intervenors K.K. DuVivier, Nancy Ehrenreich, Kris McDaniel-Miccio, Catherine Smith, Joyce Sterling, and Celia Taylor for their Complaint in Intervention state as follows:

## INTRODUCTION

1. This is a sex-based wage discrimination suit brought by the U.S. Equal Employment Opportunity Commission ("EEOC") to seek redress for female Full Law Professors, including

K.K. DuVivier, Nancy Ehrenreich, Kris McDaniel-Miccio, Catherine Smith, Joyce Sterling, and Celia Taylor ("Plaintiff-Intervenors"), who are compensated substantially less than male Full Law Professors by their employer, Defendant University of Denver ("DU"). After issuing a determination finding reasonable cause to believe that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Equal Pay Act, in regard to DU's pay practices, the EEOC filed this lawsuit against Defendant on September 30, 2016.

**PARTIES**

2. The EEOC is a federal agency charged with enforcing federal anti-discrimination laws, including Title VII, 42 U.S.C. § 2000e *et seq.*, as amended.

3. Plaintiff-Intervenors DuVivier, Ehrenreich, McDaniel-Miccio, Smith, Sterling, and Taylor are residents of the State of Colorado.

4. Plaintiff-Intervenor Lucy Marsh is a resident of the State of Colorado.

5. DU is a Colorado nonprofit corporation having its principal place of business in the City and County of Denver.

6. DU's principal office is 2100 S. University Boulevard in Denver, Colorado 80208.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and specifically under Title VII.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

9. At all relevant times, DU was covered by the definition of "employer" set forth in 42 U.S.C. § 2000e(b) of Title VII.

## SPECIFIC ALLEGATIONS

10. DU is engaged in the business of higher education.

11. DU operates the University of Denver Sturm College of Law ("Law School").

12. As of October 2013, excluding the Law School Dean at the time, DU employed 25 tenured Full Law Professors, of which 16 were male and 9 female.

13. The 9 female Full Law Professors included Lucy Marsh, DuVivier, Ehrenreich, McDaniel-Miccio, Smith, Sterling, and Taylor. Marsh, DuVivier, Ehrenreich, McDaniel-Miccio, Smith, and Taylor are still employed by DU; Sterling was employed by DU through early 2017.

14. Full Law Professors are tenured, which means that they have a right to continuous reappointment until they resign or retire and may be terminated under only a limited set of conditions pursuant to a specific set of procedures that include appeal rights.

15. All Full Law Professors are responsible for teaching courses, producing legal scholarship, and providing service to DU, the public, and the legal profession, and are evaluated in these three areas, i.e., their teaching, scholarship, and service.

16. Despite their laudable performance in each of these areas, Plaintiff-Intervenors were and continue to be paid less than the mean annual salary for male Full Law Professors.

17. In July 2013, Lucy Marsh filed charge of discrimination number 541-2013-01830, in which she claimed that DU paid her and other female Full Law Professors less than similarly-situated males.

18. The EEOC identified 9 female Full Law Professors – a list that included Plaintiff-Intervenors – over the course of its administrative investigation who it alleged were subject to a sex-based pay disparity.

19. On August 27, 2015, the EEOC issued a Letter of Determination in which it found "reasonable cause to believe that there is a violation of Title VII in that there appears to be a continuing pattern or practice at the Sturm College of Law, dating back to as early as 1973, of compensating female law professors less than their male counterparts."

20. Furthermore, the EEOC observed in its Letter of Determination that, "[DU] was aware of these pay disparities at least as of December 2012, but took no action to ameliorate this disparity, in effect intentionally condoning and formalizing a history of wage disparity based on sex."

21. The EEOC attached a Schedule A to its Letter of Determination in which it listed nine persons aggrieved, including Lucy Marsh and the five Plaintiff-Intervenors, along with their prospective wage increases, backpay owed from September 2012 through August 2015, liquidated damages, and total damages.

22. This lawsuit followed the failure of EEOC-facilitated conciliation.

23. Upon information and belief, Defendant continues to pay Plaintiff-Intervenors less than similarly-situated male employees.

**Plaintiff-Intervenor K.K. DuVivier**

24. Plaintiff-Intervenor DuVivier earned her B.A. and J.D. from Williams College and DU, respectively.

25. DuVivier spent five years in private practice as an associate attorney with Sherman & Howard and Arnold & Porter, followed by three years as an Assistant City Attorney for the City & County of Denver.

26. DuVivier began her teaching career at the University of Colorado Law School as an Instructor and then a Senior Instructor from 1990 through 1999.

27. In 2000, DU hired DuVivier to teach at the Law School as an Assistant Professor and also serve as the Director of DU's Lawyering Process Program.

28. Around the same time that it hired DuVivier, DU hired a male Assistant Professor at the same salary as DuVivier despite the fact that DuVivier had ten more years of previous teaching experience and was brought on as an Assistant Professor and the Director of DU's Lawyering Process Program.

29. DU gave this male a higher raise than DuVivier in the following merit raise cycle despite the fact that DuVivier performed substantially better in the areas of scholarship and service; the pay disparity between DuVivier and this male continues to the present.

30. DuVivier received tenure in 2006.

31. DuVivier served as the Director of DU's Lawyering Process Program until 2007. Her responsibilities in this role were extensive.

32. DuVivier received no additional compensation for serving as the Director of DU's Lawyering Process Program with the exception of a one-time payment around 2008.

33. In 2008, DU appointed David Thomson to serve as the Director of DU's Lawyering Process Program.

34. Upon information and belief, the male who succeeded DuVivier as the Director of DU's Lawyering Process Program was granted more course relief and an annual payment.

35. DuVivier became a Full Law Professor in 2010.

36. During her tenure at DU, DuVivier developed several innovative courses, including Energy Law and Renewable Energy Law, and has taught Civil Procedure to first year law students.

37. In addition, DuVivier has taught Renewable Energy Law Project-Wind, Renewable Energy for the 21st Century: Law, Policy & Markets, Local Government Law, Mining Law, and the Environmental Law Workshop.

38. From the beginning of her teaching career, DuVivier has focused on improving the law school experience through research about student learning. She has participated in several national studies, including with the Law School Admissions Council, designed to develop improved methods for teaching and assessing student work.

39. DuVivier has received a number of awards in recognition of her teaching, including: the Sturm College of Law Faculty Excellence Award for Best Professor in 2012-2013; the Law Student Bar Association Faculty and Staff Achievement Award for Mentorship in 2013-2014; and the American Association of Law Schools Teacher of the Year for DU in January 2015.

40. As a recognized national expert in renewable energy law, DuVivier has been invited to teach courses as a visiting professor on this topic at the University of Houston Law Center and Lewis & Clark Law School.

41. DuVivier is the sole author of two law textbooks: Energy Law Basics (2017) and The Renewable Energy Reader (2011); the latter was the first renewable energy law textbook in the U.S.

42. DuVivier was invited to contribute a chapter to the forthcoming book, Legal Pathways to Deep Decarbonization in the United States, by the editors, two professors from Columbia and Widener Law Schools. Although the book is not scheduled to be released until 2018, DuVivier has already completed and published online her chapter, Distributed Renewable Energy, that is in excess of 90 pages with over 400 footnotes.

43. DuVivier has authored 19 law review articles, many of which have been published in top law school journals, including the Cardozo Law Review, Albany Law Review, Oregon Law Review, University of Cincinnati Law Review, Temple Law Review, Idaho Law Review, and Wake Forest Law Review.

44. DU features several of DuVivier's publications on the Law School's Faculty Highlights and Intellectual Life website. DU also reprinted an excerpt of one of DuVivier's articles in the summer/fall 2014 issue of its alumni periodical, Denver Law magazine.

45. DuVivier published 97 columns of *The Scrivener—Modern Legal Writing* in The Colorado Lawyer, the Colorado Bar Association's monthly journal.

46. DuVivier has presented her scholarly work as a keynote speaker, presenter, panelist, and moderator in over 100 different forums locally, nationally, and internationally. DU features seventeen of these presentations on the Law School's Faculty Highlights and Intellectual Life website.

47. In 2014, DuVivier was awarded a National Science Foundation research grant for a project entitled "Good Neighbors: Legal, Economic and Natural Science Analysis for Wind Plant Impacts and Interactions," for which she serves as DU's Principal Investigator in partnership with two University of Colorado professors.

48. DU featured this project at its Founders Gala, a large annual fundraiser, in March 2015.

49. In 2015, DU awarded DuVivier the Hughes Ruud Research Professorship.

50. DuVivier served as Director of the Law School's Environmental and Natural Resources Law Program from 2009 through 2010.

51. When DuVivier submitted budget proposals for the program to then Dean Marty Katz, Katz failed to grant any funding whatsoever.

52. DuVivier served as Chair of the Faculty Executive Committee from 2009 through 2011 while the Law School was undergoing an extensive strategic planning process. She served again on this committee from 2013 through 2015, when the Law School was revising the strategic planning process.

53. Throughout her tenure at the Law School, DuVivier served on other committees, including the Advisory Committees for a number of faculty member reviews, and the Admissions, Appointments, Adjunct Support, Awards, and Lawyering Process Committees.

54. In 2012, when DuVivier asked to be appointed chair of the Adjunct Support Committee, Katz appointed a male chair instead.

55. Katz also denied DuVivier's request to be assigned to the Modern Learning Committee, an area in which she has decades of experience. Instead, Katz kept the same two males in place who have chaired the committee for years.

56. DuVivier has an extensive record of service outside of DU. Among other things, she has been a member of the American Law Institute since her nomination and induction in 2006.

57. DuVivier also served as the chair of the Natural Resources & Energy Section of the Association of American Law Schools from 2014 to 2015.

**Plaintiff-Intervenor Nancy Ehrenreich**

58. Plaintiff-Intervenor Nancy Ehrenreich earned her B.A. magna cum laude from Yale University and J.D. cum laude and LL.M. from the University of Virginia.

59. DU hired Ehrenreich to teach at the Law School in 1989.

60. Ehrenreich received tenure from DU in 1996 and became a Full Law Professor in 2002.

61. Ehrenreich created and continues to teach a Race, Class, and Reproductive Justice seminar, which was one of the first such law school courses taught in the U.S.

62. In 1997 and 1998, without any additional remuneration or credit, Ehrenreich co-taught a ground-breaking clinical course on intimate partner violence, the Battered Women's Clemency Reform Project, that ultimately resulted in four grants of clemency by then Colorado Governor Roy Romer.

63. In addition to the courses listed above, Ehrenreich has taught the following courses at the Law School: Criminal Law, Torts, Jurisprudence, and Gender and the Law.

64. Over her career, Ehrenreich has been a highly effective and appreciated professor. She was nominated for a DU-wide teaching award in spring 2015 and received the Law Stars teaching award in spring 2017.

65. As a scholar and public intellectual, Ehrenreich has been a leading voice on reproductive issues, drawing attention to the importance of an intersectional approach that includes low-income women and women of color.

66. Over the span of her career, Ehrenreich has produced 21 scholarly publications, as well as several blog posts, op-ed pieces, and magazine articles. Her work has appeared in renowned journals, including the Yale Law Journal, the Duke Law Journal, the Harvard Civil Rights-Civil Liberties Law Review, and the Michigan Journal of Race and Law.

67. Ehrenreich's book, The Reproductive Rights Reader: Law, Medicine, and the Construction of Motherhood, was published in 2008 by NYU Press. This edited volume, for which she also wrote a lengthy introduction, has been used in law and undergraduate courses across the country.

68. The Law School has recognized Ehrenreich's scholarly accomplishments and promise by awarding her a William F. Beaney Memorial Research Fellowship, the Hughes Rudd Fellowship, and a DU Professorship Grant.

69. Ehrenreich has made significant service contributions to DU, including: constituting and serving as the first chair of DU's university-wide Sexual Harassment Board; serving on the Law School's Curriculum Committee, Curriculum Reform Committee, Admissions Committee, and the Strategic Planning Committee; chairing the Lateral Appointments Committee and serving several times as a member of the general Appointments Committee; helping to organize and plan a series of annual conferences at the Law School called the Legal Theory Symposium Series; chairing the Faculty Development Committee; and serving on the Faculty Executive Committee and several performance review committees charged with assessing her colleagues.

70. In April 2004, Ehrenreich was invited to deliver the DU-wide Provost's Lecture entitled "Home and Security."

71. Nationally, Ehrenreich: served for ten years as a member of the national board of Latina and Latino Critical Legal Theory, Inc., including serving as national co-chair of the organization for three of those years; served for several years on the national board of the Society of American Law Teachers; and is a founding member and active participant in the work of the Rocky Mountain Collective on Race, Place, & Law.

72. Several male Full Law Professors who DU hired between one and 10 years after Ehrenreich, currently earn more than $40,000 more annually than Ehrenreich.

**Plaintiff-Intervenor Kris McDaniel-Miccio**

73. Plaintiff-Intervenor McDaniel-Miccio earned, with the highest distinction: her B.A. at Marymount College of Fordham University, her M.P.A from the University of New York's Rockefeller College, her J.D. at Antioch University School of Law, and both her LL.M. and Doctor of the Science of Law from Columbia University School of Law.

74. DU hired McDaniel-Miccio to teach at the Law School in 2002.

75. McDaniel-Miccio came to DU with considerable teaching experience, including her time as a lecturer at the City University of New York School of Law, a visiting clinical professor of law at Albany Law School, and a tenured associate professor at Western State University Law School. Prior to law school, McDaniel-Miccio was a university lecturer in gender studies and political theory at the University of New York.

76. At the time that she was hired by DU, McDaniel-Miccio had also been practicing law for a number of years as an assistant district attorney in Bronx County in the Appellate and Supreme

Court departments and as the founding director and attorney in charge of the Center for Battered Women's Legal Services of Sanctuary for Families, Inc. in New York City where she litigated precedent-setting cases and authored key legislation.

77. McDaniel-Miccio received tenure from DU in 2006 and was promoted to Full Professor of Law in 2009.

78. Over the course of her career with DU, McDaniel-Miccio has taught Criminal Law, Criminal Procedure, Jurisprudence, Family Law, Topics in Jurisprudence: Colonization, Topics in Jurisprudence: Law and Religion, a seminar on domestic violence, a seminar on the holocaust, and a comparative course (U.S. and Ireland) on marriage equality and religion.

79. In 2012, then Dean Katz nominated McDaniel-Miccio for the University Scholar/Teacher of the Year Award, noting in his supporting letter that she is an "extraordinary teacher and a rare blend of activity lawyer, public intellectual and gifted [at] teach[ing]."

80. McDaniel-Miccio has been the recipient of an array of both national and international scholarly awards including a Fulbright Scholar and Teaching Award, the Marie Curie Transfer of Knowledge Award, Fulbright Senior Specialist, the GEMMA Scholar and Teaching Award-Erasmus Mundus, and the Trinity Long Room Interdisciplinary Scholar Award.

81. Furthermore, DU awarded McDaniel-Miccio the Hughes-Ruud Research Professorship, DU Public Good Grant, and DU Internationalization Grant in recognition of her cutting edge scholarship and intellectual bridge building with national and international communities.

82. Starting in 2008, McDaniel-Miccio developed professional relationships with academic institutions in Ireland as a way to build an international bridge between DU, the Law School, and

Irish academies, including Queens College, Belfast, University College Dublin, Trinity College Dublin, and NUI Galway.

83. In 2015, McDaniel-Miccio received dual appointments for three years to the Equality Institute of University College, Dublin and the Trinity College Gender and Women Studies Program to continue her research on gender equality in the U.S. and Ireland.

84. In 2015, McDaniel-Miccio was awarded the highly prestigious Irish Law Society Award, UCD Chapter, for Human Rights. Previous recipients include Noam Chomsky, Bill Clinton, Seamus Heaney, Antonin Scalia, and former Republic of Ireland presidents Mary Robinson and Michael Higgins.

85. McDaniel-Miccio has authored 22 law review published articles, seven of which are featured on the Law School's Faculty Highlights and Intellectual Life website, and three book chapters, including works peer reviewed for publication by the Oxford University and Cambridge University Press. Her articles have been published by Harvard, Columbia, and Georgetown in journals on gender, law, and international law.

86. McDaniel-Miccio has lectured and keynoted at myriad conferences and scholarly convocations throughout the U.S. and Ireland, six of which are featured on the Law School's Faculty Highlights and Intellectual Life website.

87. Over four years, McDaniel-Miccio designed and implemented four ground-breaking international conferences on feminist theory and politics in the U.S. and Dublin that attracted attendees from the U.S., Europe, and the Middle East.

88. McDaniel-Miccio has engaged in *pro bono* consulting across the U.S. and Ireland, including with: the Office for the Prevention of Domestic, Sexual and Gender-Motivated

Violence, Marriage Equality, and Women's Aid in the Republic of Ireland; the Colorado Coalition Against Domestic Violence, the Colorado Bar Association's Access to Justice Committee and Domestic Violence Task Force, and the Denver Domestic Violence Task Force in Colorado; the New York State Office of the Governor, New York, Kings, and Bronx County District Attorneys' Offices, the New York City Police Department and Child Welfare Departments, the New York State Legislature, Codes Committee, Children and Family Committee, and Legislative Women's Task Force; and, in California, the YWCA of Orange County and California State University at Fullerton's Women's Center.

89. At present, McDaniel-Miccio is creating The Bella Abzug Institute for Gender Equality and Social Justice, which will incorporate interdisciplinary advocacy, research, and scholarship. She has convened a body of scholars, academics, state actors, community and statewide non-governmental organizations, members of the bench and bar from Colorado and New York to assist in the development of the Institute.

90. At DU, McDaniel-Miccio was appointed by the Law School Dean to serve as: chair of the Curriculum, Faculty Development and Mentoring Committees and the International Conference Committee on Feminism and the Law; member of the Multicultural, Appointments, Lateral Appointments, and Student Mentoring Committees; and faculty advisor of the Jewish Law Students and Women and the Law Associations, DU's Law School LGBT student group, and Student Members and Former Members of the Armed Services Association.

91. Outside of DU, McDaniel-Miccio has: been appointed to the District Court Advisory Council for the Denver District Court, the New York State Court of Appeals Taskforce on Domestic Violence and Child Abuse Family and Criminal Taskforce on Orders of Protection,

and the New York City Police Department Advisory Board on Hate Crimes; testified before the U.S. Senate's Judiciary Committee on Hate Crimes, and the New York State Assembly's Codes Committee and Committee on Children and Families; and authored key state legislation on domestic violence and hate crimes in New York.

92. In May 2012, McDaniel-Miccio sent a request to the Law School's Dean, Marty Katz, that her pay be compared to other Full Law Professors with the same number of years of teaching to ensure that she was being paid a comparable amount.

93. Katz responded that Full Law Professors' salaries are based on both the number of years since they graduated from law school and their teaching experience. When McDaniel-Miccio asked how these factors were weighed, Katz responded that there was no "clear formula" and referred to the process of determining salaries as "complex" and "evolving."

94. Katz concluded McDaniel-Miccio's salary review by issuing a memorandum stating that her salary was "on target" but failed to include any information to support this result, including the salary ranges for other Full Law Professors with comparable experience despite having offered to share that information with McDaniel-Miccio.

95. McDaniel-Miccio was, therefore, shocked to see that the EEOC had listed her as an aggrieved party in its August 2015 Letter of Determination.

**Plaintiff-Intervenor Joyce Sterling**

96. Plaintiff-Intervenor Joyce Sterling earned a B.A., M.A., and Ph.D. in sociology from University of California, Santa Barbara, University of Hawaii, and University of Denver, respectively.

97. DU hired Sterling to teach at the Law School in 1978. She received tenure in 1981 and became a Full Professor in 1987.

98. At DU, Sterling has taught Torts, Legal Profession, History of American Law, Scientific Evidence, Law Firm as a Business Organization, Negotiation, and Law and Society and Criminal Justice seminars.

99. Sterling incorporated experiential learning into the Scientific Evidence course, collaborating with a professor from the Department of Forensic Biology at DU to include simulated *Daubert* hearings judged by Colorado Supreme Court justices and environmental experts.

100. Sterling received DU's Law Stars Teaching Award in 2012.

101. Sterling was a visiting scholar at Stanford University Law School and the American Bar Foundation in Chicago and a visiting professor at the University of Cincinnati College of Law and Southwestern University Law School.

102. As a scholar and public intellectual, Sterling has received national and international recognition for her research on problems facing women in legal careers, including the persistent income gap between female lawyers and their male counterparts.

103. Over the span of her career, Sterling has published more than 25 scholarly works, as well as several monographs and magazine articles. Her work has appeared in, among others, the Annual Review of Law and Social Science, Journal of Legal Education, Fordham Law Review, Social Forces, Georgetown Journal of Legal Ethics, Texas Journal of Women and the Law, Florida International Law Review, Indiana Journal of Global Legal Studies, Southwestern

University Law Review, Capital University Law Review, and European Yearbook of Sociology of Law and Sociological Forum.

104. Sterling has served as a co-principal investigator of the high-profile project After the JD—the First National Longitudinal Study of Careers of Lawyers, which follows and evaluates the progression of the legal careers of a national cohort that graduated from law school in 2000. To support the study, Sterling and associated co-principal investigators have sought out over $3 million in funding from Access Group, Inc., the American Bar Foundation, Law School Admissions Council, National Conference of Bar Examiners, National Science Foundation, National Association of Law Placement, and Open Society Institute.

105. DU has recognized Sterling's scholarly accomplishments by awarding her the Hugh Ruud Fellowship twice, as well as a DU Professorship Grant.

106. Sterling served as the Associate Dean of Faculty Scholarship from 2014 through 2017.

107. When Sterling asked for $20,000 in additional compensation to serve in this role, which was the same amount received by her male predecessor, the Dean at the time, Marty Katz, responded that DU now believed that amount was too high and offered her only $15,000.

108. At DU, Sterling served as Chair of the Law School Admissions Committee, an elected member of the Faculty Policy Committee, Assessment Committee, Faculty Development Committee, Faculty Appointments Committee, Hughes-Ruud Research and Development Fund Faculty Coordinator, Examinations and Standing Committee, Faculty Evaluations Committee, Research Policy Committee, Dean Search Committee, and Law School Assessment of Bar Passage Special Committee.

109. Sterling has served on a number of DU-wide committees, including the: Institutional Review Board; the University Investigation Committee, charged with investigating behavior violations by faculty members; Search Committee for Dean of Graduate Studies; University Accreditation Committee on Graduate Studies; Review Board for the Center for Teaching and Learning; and an Advisory Board Member for the Interdisciplinary Research Incubator for the Study of (In) Equality.

110. Nationally, Sterling has served as: Executive Officer, Treasurer, and Trustee of the Law and Society Association; Chair of Grants Sub-Committee, member of the Research Committee, and member of the Standing Committee on Test Development and Research at the Law School Admissions Council; and member of the Law School Student Engagement Advisory Board at the Law School Survey of Student Engagement.

111. In June 2017, the American Bar Association President-Elect appointed Sterling to serve as a member of the Advisory Council and as a consultant and senior advisor for the Initiative on Achieving Long-Term Careers for Women in Law.

**Plaintiff-Intervenor Catherine Smith**

112. Plaintiff-Intervenor Catherine Smith earned her B.A. at Wofford College and her M.P.A. and J.D. from the University of South Carolina.

113. After law school, Smith completed two one-year federal judicial clerkships with U.S. Magistrate Judge William M. Catoe, Jr. and Judge Henry Politz, Chief Judge of the Fifth Circuit Court of Appeals.

114. DU hired Smith as an Assistant Professor in 2004. She received tenure in 2007 and became a Full Professor in 2013.

115. In fall 2010, Smith became the Associate Dean of Institutional Diversity and Inclusiveness, a role that she played a major role in crafting.

116. The Associate Dean of Institutional Diversity and Inclusiveness position was one of the first of its kind and has served as a model for other units on DU's campus and other law schools nationwide.

117. Over the course of her career with DU, Smith has taught: Torts; Employment Discrimination; Family Law; Sexuality, Gender and the Law; and Comparative Sexuality and the Law.

118. Smith has been recognized for her superior teaching ability, including receiving the Most Engaging Professor and Most Outstanding Professor awards from the Law School's Student Bar Association in 2012.

119. Since 2002, Smith has published 12 articles, five short essays, five blogs and op-eds, and 10 other publications.

120. Smith's scholarship on the rights of children has generated significant recognition, including:

a. in 2010, Smith's article, *Equal Protection for Children of Gay and Lesbian Parents: Challenging the Three Pillars of Exclusion – Legitimacy, Dual-Gender Parenting, and Biology*, won the UCLA Law School, Williams Institute's Dukeminier Award as one of the best sexual orientation law review articles of the year;

b. in 2011, Smith's essay on the rights of children of same-sex parents was one of several selected by the American Association of Law School Section on Gender

and Sexual Orientation Identity's writing competition, *On the Cutting Edge: Charting the Future of Sexual Orientation and Gender Identity Scholarship*; and

c. her more recent publications on the rights of children have been published in the Washington University Law Review, U.C. Davis Law Review, and the Duke's Journal of Law and Contemporary Problems.

121. Based on her research and scholarly agenda advancing the rights of children, Smith co-authored three amicus briefs on behalf of Scholars of the Constitutional Rights of Children that were filed in the landmark U.S. Supreme Court cases, *U.S. v. Windsor* and *Obergefell v. Hodges* as well as a case in the Fifth Circuit.

122. In recognizing the detrimental impact of same-sex marriage bans on children of same-sex couples, Justice Kennedy cited the Scholars of the Constitutional Rights of Children's amicus brief in the majority opinion of *Obergefell*.

123. The Law School's Faculty Highlights and Intellectual Life website features three of Smith's recent publications and two of her recent presentations at Columbia Law School, Yale Law School, and Texas Southern University.

124. At DU, Smith has served as: chair of the Faculty Appointments Committee in a year when the Law School searched for three legal research and writing faculty and nine tenure-track faculty and the Inaugural Faculty Executive Committee; member of six hiring and search committees, as well as, the Promotion and Tenure (Policy) Committee, Spanish for Lawyers Program Committee, and Budget Committee; and faculty advisor for the Law School's LGBT student group. Smith has also organized numerous campus speakers and academic conferences.

125. Smith has an exemplary record of service to the Law School and greater community and has been recognized accordingly, including as a recipient of the Colorado Women's Bar Association Foundation's "Raising the Bar" Award in 2014, and the recipient of the Haywood Burns/Shanara Gilbert Award from the Northeast People of Color Legal Scholarship Conference in 2013, which recognizes "a person who has demonstrated a sustained commitment to the advancement of the legal, social, and economic position of People of Color in our society."

126. In 2016, Smith also received the national Clyde Ferguson Award from the American Association of Law Schools Minority Groups Section in recognition of her accomplishments in teaching and mentoring, service, and scholarship.

127. In November 2012, Smith discovered that the stipend that she was receiving for her role as Associate Dean of Institutional Diversity and Inclusiveness was $5,000 less than the stipend paid to the male Associate Dean of Scholarship.

128. When Smith brought this to Katz's attention and asked for her stipend to be adjusted prospectively and retroactively, Katz allegedly raised the issue with Provost Gregg Kvistad.

129. Katz then claimed that Kvistad had authorized DU to make a one-time $7,500 payment to Smith, which represented half of the total pay discrepancy.

130. When Smith again requested the full pay discrepancy or, in the alternative, credit hour equivalents, Katz refused, citing an alleged directive from the Provost that Smith's recovery be limited to the one-time payment.

**Plaintiff-Intervenor Celia Taylor**

131. Plaintiff-Intervenor Celia Taylor earned her B.A., J.D., and LL.M. degrees from George Washington University, New York University School of Law, and Columbia University Law School, respectively.

132. From 1989 through 1991, Taylor practiced corporate and securities law at a private firm in San Francisco.

133. In 1992, Taylor represented non-profit organizations and corporate enterprises as an independent contractor.

134. From 1992 through the present, Taylor has taught in various capacities at Columbia Law School, Tulane University's Study Abroad Program, the National Institute for Legal Education, the University of Cincinnati College of Law, and Instituto Internacional de Derecho Y Empress, Inidem Business Law School.

135. DU hired Taylor as a Professor in August 1994. She received tenure around 2001 and became a Full Professor around 2006.

136. Since approximately 2014, Taylor has served as the Law School's Director of International Legal Studies Program. In this role, she has designed and implemented a study abroad program, international exchange program, and a new international LL.M. degree offered at the Law School.

137. As Director of the International Legal Studies Program, Taylor has also directed the Law School's participation in a project working with Russian law schools in partnership with Moscow State University. She is currently working to develop programs to build relationships with law schools in Central and South America.

138. Over the course of her career with DU, Taylor has taught: Business Law, Corporations, Comparative Corporate Governance, Contracts, Corporate Drafting, International Business Negotiations, International Law, International Human Rights and Economic Development, and Securities Regulation.

139. Taylor has been recognized for her superior teaching ability, including receiving Teacher of the Year in 1994-1995 and the Law Stars Teaching Award around 2015.

140. Taylor has also received the Bloody Hatchet Award, which is given to the most respected teacher with the highest standards, from DU's Student Bar Association a number of times during her tenure at DU.

141. Taylor has authored over 32 publications, including articles that have appeared in the law reviews of, among others, Syracuse, George Washington, Tulane, Wake Forest, New York University, and University of Pennsylvania Law Schools.

142. Taylor has also written articles for the Denver Post, is a routine contributor to racetothebottom.org, and is a regular source for Law360, The Agenda, and Climate Change News.

143. The Law School's Faculty Highlights and Intellectual Life website features five of Taylor's recent publications.

144. Taylor has given over 22 presentations in the U.S. and internationally on a wide range of topics from the Dodd-Frank Act and teaching corporations experientially to financial regulations and teaching ethics in context.

145. At DU, Taylor has chaired and been a member of the Appointments Committee, 401(c) Committee, and Promotion and Tenure Committee (f/k/a Policy Committee). The chair of the Promotion and Tenure Committee is an elected position.

146. Among other positions, Taylor has served as a member of: the Colorado Bar Association Business Law Section Executive Council, Steering Committee for the Formation of SEA/Colorado, Colorado Corporations Code Drafting Committee, and National Conference of Bar Examiners.

**Defendant's Response to the Gender Pay Gap**

147. In December 2012, Katz authored and distributed to the faculty a memorandum that addressed the existing pay gap between female and male Full Law Professors.

148. Shortly after the release of the memo, Katz met with several female Full Law Professors, including Plaintiff-Intervenors Ehrenreich and Smith regarding the pay disparity between male and female Full Law Professors.

149. During this meeting, Katz stated that, "I don't think the [pay] differential implies there's necessarily something wrong."

150. Katz also indicated, without basis, that female Full Law Professors were not performing as well as their male colleagues when he suggested, among other things, that the Law School should address if its female faculty need "support" to succeed at scholarship.

151. Following the distribution of the December 2012 memo, Katz met with Smith and assured her, not only that she was not being paid less than her male counterparts, but that she was "actually making more" than them.

152. Between December 2012 and August 2015, Smith had several discussions with Katz about the pay differential between female and male Full Law Professors in which she encouraged Katz to rectify the disparity; each time, Katz failed to do so.

153. Smith learned that Katz's assurance that she was being paid more than her male counterparts was not the case when she received a copy of the EEOC's Letter of Determination in August 2015 in which she was listed as a person aggrieved with significant backpay in an attached schedule.

154. On August 31, 2015, DU released a Statement concerning the EEOC Letter of Determination stating that Marsh was paid less than her peers "as a result of her sub-standard performance in scholarship, teaching and service."

155. With respect to the other female Full Law Professors, the statement quoted Chancellor Rebecca Chop as "stand[ing] by [DU's] historical system of evaluation and merit pay."

156. The statement implied that the remaining female Full Law Professors were being paid less because of performance inadequacies.

157. When Smith approached Katz about this statement and her concern that it reflected poorly on the reputation and career of all of the female Full Law Professors, Katz responded that the Chancellor, not he, was responsible for the statement.

## STATEMENT OF CLAIMS

**FIRST CLAIM FOR RELIEF**
(Sex Discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, against Defendant)

158. The foregoing allegations are realleged and incorporated herein by reference.

159. DU subjected Plaintiff-Intervenors to different terms and conditions of their employment based on sex by paying them less than males who occupied similar jobs.

160. DU's conduct discriminated against Plaintiff-Intervenors on the basis of their sex in violation of Title VII.

161. DU's actions toward Plaintiff-Intervenors were done knowingly and intentionally or with reckless disregard of their rights.

162. As a direct and proximate result of DU's actions, Plaintiff-Intervenors have suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff-Intervenors K.K. DuVivier, Nancy Ehrenreich, Kris McDaniel-Miccio, Catherine Smith, Joyce Sterling, and Celia Taylor respectfully request that this Court enter judgment in their favor and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;
B. Back pay and benefits;
C. Injunctive and/or declaratory relief;
D. Punitive damages;

E. Front pay in the form of prospective salary increases;

F. Attorney fees and costs of the action, including expert witness fees, as appropriate;

G. Pre-judgment and post-judgment interest at the highest lawful rate; and

H. Such further relief as justice allows.

**PLAINTIFF-INTERVENORS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted September 28, 2017.

By: SWEENEY & BECHTOLD, LLC

s/Charlotte N. Sweeney
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
cnsweeney@sweeneybechtold.com

s/Joan M. Bechtold
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
jmbechtold@sweeneybechtold.com

s/Ariel B. DeFazio
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
abdefazio@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF-INTERVENORS DuVIVIER, EHRENREICH, McDANIEL-MICCIO, SMITH, STERLING, and TAYLOR

Plaintiff-Intervenors' Addresses:

K.K. DuVivier
2255 E. Evans Avenue
Denver, CO 80210

Nancy Ehrenreich
2255 E. Evans Avenue
Denver, CO 80210

Kris McDaniel-Miccio
2255 E. Evans Avenue
Denver, CO 80210

Catherine Smith
2255 E. Evans Avenue
Denver, CO 80210

Joyce Sterling
2255 E. Evans Avenue
Denver, CO 80210

Celia Taylor
2255 E. Evans Avenue
Denver, CO 80210

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2017, a true and correct copy of the foregoing was served via electronic mail to the following addresses:

Jim Goh
Steven W. Moore
LaLonnie Gray
Constangy, Brooks, Smith & Prophete, LLP
JGoh@constangy.com
SMoore@constangy.com
LGray@constangy.com
*Attorneys for Defendant*

Michael Imdieke
Karl Tetzlaff
Michael.Imdieke@eeoc.gov
Karl.Tetzlaff@eeoc.gov
Wasan.Awad@eeoc.gov
*Attorneys for EEOC*

Baine P. Kerr
Jonathan B. Boonin
Lauren E. Groth
Hutchinson Black and Cook, LLC
kerr@hbcboulder.com
boonin@hbcboulder.com
groth@hbcboulder.com

Jennifer Reisch
Equal Rights Advocates
jreisch@equalrights.org
*Attorneys for Plaintiff-Intervenor Lucy Marsh*

*s/ Ashley Rodriguez*
Ashley Rodriguez